Michael Yesk (SB#130056)
Megan Dailey (SB#221574)
Yesk Law
70 Doray Drive, Ste 16
Pleasant Hill, CA 94523
925-849-5525
m.yesklaw@gmail.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORETO G. CEREZO and NIDA F. CEREZO,<br><br>　　Plaintiffs,<br><br>vs.<br><br>U.S. BANK, N.A.; WELLS FARGO BANK, N.A.; NDEX WEST, LLC; DOES 1-100, INCLUSIVE,<br><br>　　Defendants. | Case No.: 5:13-cv-01540-PSG<br><br>OPPOSITION TO WELLS FARGO'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM<br><br>Date: May 28, 2013<br>Time: 10:00 a.m.<br>Ctrm: 5, 4th Fl<br><br>Complaint Filed: March 7, 2013 |

OPPOSITION TO WELLS FARGO'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM

**Table of Contents**

Table of Authorities ................................................................................................. iii

Cases ................................................................................................................... iii

Statutes................................................................................................................. iii

Other Authorities ................................................................................................. iv

Memorandum of Points and Authorities..............................................................1

Introduction..........................................................................................................1

Factual Background .............................................................................................1

Law and Argument ..............................................................................................2

I.         Legal Standard .......................................................................................2

II.        P Plaintiff's Claims Are Not Preempted by the Home Owner's Loan Act …2

III.       Plaintiff Stated Sufficient Facts for Breach of Contract(s) or Implied Agreements……………………………………………………………..4

IV.       Plaintiff Stated a Cause of Action for Lack of Standing and Wrongful Foreclosure ..………………………………………………………………….9

V.        Plaintiffs State Facts Sufficient to Constitute a RICO Violation...............12

VI.

Plaintiffs State Facts Sufficient to Support a Cause of Action for Unfair and
      Deceptive Business Act Practices ................................................................13

VII.

Conclusion………………………………………………………………...15

**Table of Authorities**

Cases

*Argueta v. J.P. Morgan Chase*, 787 F.Supp.2d 1099 (E.D. Cal. 2011) ........................................ 13

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ........................................................................................ 2

*Bank of Italy v. Bentley*, 217 Cal. 644 (1933) ............................................................................... 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................... 2

*Debrunner v. Deutsche Bank National Trust*, 2012 WL 883128 (Cal. Ct. App. 2012) .................. 5

*Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 356 (2011) .............................................. 4

*Gomes v Countrywide Home Loans*, 192 Cal. App. 4th 1149 (2011) ............................................ 3

*Humboldt Sav. Bank v. McCleverty*, 161 Cal. 285 (1911) .............................................................. 6

*In re Cruz*, 457 B.R. 806 (Bankr.S.D.Cal. 2011) .......................................................................... 11

*In re Salazar*, 448 B.R. 814 (Bankr.S.D.Cal. 2011) ............................................................ 6, 10, 11

*Javaheri v. JPMorgan Chase Bank, N.A.*, 2011 WL 2173786 (C.D. Cal. 2011) .......................... 13

*Kachlon v. Markowitz*, 168 Cal. App. 4th 316 (2008) .................................................................... 9

*Mabry v. Superior Court*, 185 Cal. App. 4th 208 (2010) ............................................................... 7

*Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal. App. 4th 1040 (2009) ........................... 8

*Onofrio v. Rice*, 55 Cal. App. 4th 413 (1997) ................................................................................. 6

*Sacchi v. Mortgage Electronic Registration Systems, Inc.*, 2011 WL 2533029 (C.D. Cal. 2011) 3, 5, 6, 12

*Stockwell v. Barnum*, 7 Cal. App. 413 (1908) .............................................................................. 10

*Tamburri v. Suntrust Mortgage, Inc.,* 2011 WL 6294472 (N.D. Cal. 2011) ........................... passim

*Ung v. Koehler*, 135 Cal. App. 4th 186 (2005) ............................................................................... 5

*Wanger v. EMC Mortgage Corp.*, 103 Cal. App. 4th 1125 (2002) ............................................... 15

Statutes

12 C.F.R. § 560.2(b)(10) .................................................................................................................. 7

12 C.F.R. § 560.2(b)(4) .................................................................................................................... 6

12 C.F.R. § 560.2(c)(2) ................................................................................................................ 7, 8

12 C.F.R. 560.2(b)(1-13) ................................................................................................... 7

12 U.S.C. § 1461, *et seq.*............................................................................................... 6, 7

12 U.S.C. § 2605(e) ......................................................................................................... 14

Cal. Civ. Code § 2923.5................................................................................... 7, 12, 13

Cal. Civ. Code § 2924........................................................................................................ 6

Cal. Civ. Code § 2924(a)(1).............................................................................................. 3

Cal. Civ. Code § 2932.5................................................................................... 6, 9, 10, 11

Cal. Civ. Code § 47(c)(1)................................................................................................ 9

Fed. R. Civ. Proc. 12(b)(6) ........................................................................................... 13

Fed. R. Civ. Proc. 9(b) ................................................................................................... 13

   Other Authorities

Miller & Starr California Real Estate 3d 10:212 ........................................................... 5

### Memorandum of Points and Authorities

### Introduction

Plaintiffs LORETO G. CEREZO and NIDA F. CEREZO ("Plaintiffs") herein submit their OPPOSITION TO WELLS FARGO'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM for failure to state a claim.

### Factual Background

Plaintiffs LORETO G. CEREZO and NIDA F. CEREZO ("Plaintiffs") are allegedly the Borrowers on that certain Deed of Trust recorded on January 19, 2006 as Instrument No. 18773046 in the Official Records of the Recorder of Santa Clara County, California, purportedly putting a lien on the real property located at 3125 Woods Way, San Jose, CA 95148, (the "Subject Property").

On January 19, 2006, Plaintiffs recorded a Deed of Trust in the Santa Clara County Recorder's Office against the Subject Property to secure a Promissory Note in the amount of $628,000 in favor of World Savings Bank, FSB, ("World Savings") as "Lender." The Deed of Trust names Golden Savings Assoc. Service Co. ("Golden") as Trustee.

Subsequently, as was its usual practice, World Savings securitized and sold the beneficial interest in Plaintiffs' Deed of Trust to a Mortgage Backed Securities Trust,

Later in 2006 or 2007, as was its customary business practice, World Savings assets were acquired by Wachovia which securitized and sold Plaintiffs' Deed of Trust to a real-estate-mortgage-investment-conduit ("REMIC") trust, the Wachovia Mortgage Loan Trust, Series 2006-ALT1 Trust, ("Series 2006 ALT1 Trust" or "the Trust"). After this sale, Wachovia retained solely the servicing rights to Plaintiffs' loan. Well Fargo then acquired Wachovia and claims a right to foreclose on Plaintiffs' property.

On December 7, 2012, a Notice of Default and Election to Sell Under Deed of Trust ("NOD") was recorded in the Santa Clara County Recorder's Office. The Notice of Default was

signed illegibly by Meriel Lee, purportedly as employee of NDEX, as agent for the Beneficiary, Wells Fargo.

On or about January 2, 2013, a Substitution of Trustee under Plaintiffs' Deed of Trust was executed. Through this document, Wells Fargo, purported to make a substitution of Trustee in favor of NDEX.

Thereafter, a Notice of Trustee's Sale was recorded in the Santa Clara County Recorder's Office, signaling the final stage in the process of foreclosing upon the Subject Property. A Trustee's Sale is currently scheduled for March 16, 2013.

## Law and Argument

### I. Legal Standard

A Rule 12(b)(6) Motion to Dismiss tests only whether the Plaintiff's Complaint states sufficient facts to state a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). A complaint which contains sufficient factual allegations "to raise a right to relief above the speculative level" will survive a motion to dismiss. *Id.* A complaint must state a claim that is facially plausible, requiring facts showing more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating whether a complaint meets this standard, the court is not required to take the plaintiff's legal conclusions as true, but must take the plaintiff's factual allegations as true, and then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

### II. Plaintiff's Claims Are Not Preempted by the Home Owner's Loan Act

Defendant claims that the Home Owners' Loan Act of 1933, 12 U.S.C. § 1461, et seq. ("HOLA"), preempts the California non-judicial foreclosure statutory scheme, California Civil Code Section 2924, et seq. See 12 C.F.R. § 560.2(b)(10) (listing state laws relating to

"[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages" as among those preempted.).

As a national bank, the actions of Wells Fargo are not subject to preemption by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1451, et seq., which provides authority for the creation and regulation of federal savings associations, the establishment of the OTS, and also invests power in the Director of the OTS to carry out the responsibilities of the Director of the office. 12 U.S.C. § 1462a(b)(2). Instead, the actions of Wells Fargo are regulated under the National Bank Act ("NBA"), 12 U.S.C. § 38, et seq. which is structured differently from HOLA and provides a basis only for "conflict" preemption of state law. Because California Civil Code § 2923.5 addresses the foreclosure process and ownership interest rather the loan processing, there is no federal foreclosure law that would pose a conflict and therefore, no preemption of state law under the NBA or HOLA.

However, Defendant ignores the difference between laws governing the origination of a loan or processing of its payments and state laws governing the transfer and disposition of real property. See 12 C.F.R. § 560.2(c)(2) (listing real property law as among those state laws not preempted); see also *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 230 (2010) (noting that "the process of foreclosure has traditionally been a matter of state real property law" and going on to conclude that HOLA does not preempt claims under California Civil Code Section 2923.5 governing borrower contact requirements prior to the Notice of Default.) (*Emphasis in the original*).

The *Mabry* court found that the "processing" and "servicing" of mortgages does not include the steps required to complete a non-judicial foreclosure, noting that the regulation of foreclosures is an area uniquely within the realm of state law. *Id*. at 230-31. Similarly, this Court should conclude that, contrary to Defendant's contentions, the exclusive federal regulation of "processing" and "servicing" of mortgages under HOLA does not extend beyond mortgage servicing to also include preemptive regulation of real property transfers via non-judicial foreclosures, an area traditionally within the confines of state law as "real property law".

1  Further, to the extent that Defendant's preemption argument is based on Plaintiffs' challenge to
2  the fact of securitization itself, any preemption should not also apply to Plaintiffs' challenge that
3  the actions by Wells Fargo Bank to complete the foreclosure were wrongful because those
4  actions did not arise out of the origination or servicing of the loan but instead stemmed from
5  Wells Fargo's efforts to wrongfully foreclose upon the Deed of Trust.

### III.  Plaintiff Stated Sufficient Facts for Breach of Contract(s) or Implied Agreement(s)

Any foreclosure of Plaintiffs' home and Defendants' assertion of rights to the beneficial interest and powers of trustee in recorded documents and cloud on Plaintiffs' title is wrongful because Defendants were and are not currently the true Beneficiary or Trustee under Plaintiffs' Deed of Trust and thus lack the power of sale and to record documents with legal effect as to Plaintiffs' Property and conducted an illegal foreclosure sale.

Plaintiffs facing non-judicial foreclosure can assert "a specific factual basis for alleging that the foreclosure was not initiated by the correct party." *Gomes v Countrywide Home Loans*, 192 Cal. App. 4th 1149, 1156 (2011).  That is, a plaintiff may bring a suit alleging that the entity that initiated the foreclosure lacked the power to foreclose and therefore had no legal authority to foreclose upon the property.  Several courts have allowed plaintiffs' claims to proceed where the plaintiff asserted that the entity which initiated the foreclosure lacked the right to foreclose.  See *Tamburri v. Suntrust Mortgage, Inc.*, 2011 WL 6294472 at *10-11 (N.D. Cal. 2011) (citing *Sacchi v. Mortgage Electronic Registration Systems, Inc.*, 2011 WL 2533029, *8 (C.D. Cal. 2011)) (holding that there is a valid cause of action where there are "facts suggesting the foreclosing party had no legal interest in the deed at the appropriate time").  Thus, contrary to Defendants' contention Plaintiffs may challenge the validity of the Notice of Default ("NOD"), Substitution, and Notice of Trustee's Sale ("NOTS") and whether Defendants had the legal power to foreclose.

Wells Fargo was never transferred the beneficial interest in Plaintiffs' Deed of Trust because Wachovia lacked the power of sale and , the merger or purchase of assets was ambiguous with respect to acceding to rights to Plaintiffs' mortgage and DOT, as well as the right to transferring same.  There was no Assignment of Deed of Trust.  The foreclosure documents including the NOD, Substitution of Trustee, and Notice of Trustee's Sale cloud Plaintiff's title because Wells Fargo, U.S. Bank and NDEX had no authority to record an NOD as of December 7, 2012 due to the fact that the Substitution of Trustee in favor of NDEX was not recorded until January 29, 2013, and was invalid because it was signed by an employee of Wells Fargo which had no legal relationship and was a stranger to Plaintiffs' DOT and mortgage.

Since the NOD is invalid and there was no assignment, Defendants had no ownership interest to enforce, and any foreclosure actions taken on behalf of U.S. Bank, Wells Fargo, NDEX or any other entity are wrongful and in violation of the California Civil Code.

The NOD is false and in violation of the terms of Plaintiff's DOT.  The foreclosure violates Plaintiff's DOT which required the Trustee to record the NOD and in this case the NOD was recorded by a third-party without any legal claim to be trustee and which was not the true trustee under the DOT.

Here, a foreclosure and sale of the Subject Property allegedly pursuant to the power of sale under Plaintiffs' Deed of Trust is oppressive and illegal because the NOD was recorded by NDEX who is not the true Trustee.  The original Trustee under the Deed of Trust was Golden West Savings Association Service Company ("Golden West").   NDEX claims to be the proper Trustee despite the fact that a Substitution of Trustee in favor of NDEX was not recorded by the original Lender before the chain of title was broken and was recorded by Wells Fargo on January 29, 2013, after NDEX recorded the NOD on December 7, 2012; therefore NDEX had no agency to record any documents as of December 7, 2012 or thereafter due to the lack of certainty in the purchase agreements between World Savings, Wachovia and Wells Fargo and with respect to Plaintiffs' mortgage and DOT.  Neither U.S. Bank or Wells Fargo could not have been the legal beneficiary at that point, nor at all, because the servicing rights to Plaintiffs' loan were also

muddied due to the imperfect securitization and failure to specifically identify Plaintiffs' Note and DOT in the bank merger and purchase transactions.

Here, there was never any valid Substitution of Trustee because Wells Fargo was not the Lender and there was no proper conveyance of the property or mortgage because there was no assignment.

The recording of these documents cast doubt on Plaintiffs' title. Plaintiffs have suffered a direct financial loss as a result of the recordation of these false documents because they were forced to seek legal counsel to protect their interest in the Subject Property and from having their home wrongfully sold.

These documents caused economic damages to Plaintiffs because they disclose a claim of right, title or interest in the subject property which gives rise to a need for policy endorsements for title insurance, settlement of a claim shown on a title report, and/or a significant dissuasive factor for any prospective purchaser inspecting the property for sale, and/or its disclosures, any and all of which factors negatively affected and continue to affect the purchase price of the Subject Property, and vendibility, of the Subject Property in an amount to be proven at trial.

The recording of the aforementioned documents made if necessary for Plaintiffs to retain attorneys and to bring this action to cancel the instruments casting doubt on Plaintiffs' title.

The Court of Appeal has held that at least in cases such as this one where title was disparaged in a recorded instrument, attorney fees and costs necessary to clear title or remove the doubt case on it by defendant's falsehoods are, by themselves, sufficient pecuniary damages for purposes of a cause of action for slander of title. *Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999.

The Court also noted that courts in other jurisdictions have directly confronted this issue and have concluded that attorney fees incurred in removing the effects of slander of title are recoverable as special damages even in the absence of proof of an impairment of vendibility.

In this matter, Plaintiffs assert a claim of breach of contract on the basis of the totality of allegations in the Complaint including facts alleged and pertaining to the false Deed of Trust, and foreclosure documents which constitute violations of the California Civil Code.

Furthermore, even if Plaintiff's claims were based solely on the grounds that a PAA fails to transfer the right to foreclose, at least one federal court of jurisdiction has found this argument to be persuasive. In an 11-page Order dated June 2, 2011, the United States District Court for the Central District of California has denied JPMorgan Chase Bank's Motions to dismiss a borrower's claims for violations of CA Civ. Code 2923.5, Wrongful Foreclosure, Quiet Title, Quasi Contract, Declaratory Relief, and Injunctive Relief in the matter of *Javaheri v. JPMorgan Chase Bank,* Case No. CV10-08185 ODW. The decision cites case law from the United States Supreme Court, the United States Court of Appeals for the 9th Circuit, and California state courts.

The borrower in the *Javaheri* case filed a Second Amended Complaint for numerous causes of action including those identified above. The loan had been originated by Washington Mutual Bank (WaMu), with the loan thereafter being securitized. JPM relied upon the Purchase and Assumption Agreement between JPM and the FDIC as Receiver for WaMu, contending that it had succeeded to all of WaMu's assets, including the borrower's note.

The borrower in *Javaheri* claimed that between November 13 and 30, 2007, WaMu transferred his Note to Washington Mutual Mortgage Securities Corporation and that the Note was sold to an investment trust and became part of a loan pool, PSA, CDO, mortgage-backed security or pass-through certificate, credit default swap, investment trust, and/or a special purpose vehicle. The loan was identified with a CUSIP number and the pool number. The court found that "Coupled with Plaintiff's allegation that JPMorgan never properly recorded its claim of ownership in the subject property, the above mentioned facts regarding the transfer of Plaintiff's Note prior to JPMorgan's acquisition of WaMu's assets raise Plaintiff's right to relief above a speculative level", warranting denial of JPM's Motions to Dismiss as to the claims set forth above.

One of the more interesting theories raised by *Javaheri* was the "Quasi Contract" claim, where the borrower alleged that JPM was unjustly enriched by any payments made by the borrower to JPM which were not paid to the lender or beneficiary. The Court concluded, for purposes of pleading, that "if indeed JPMorgan did not own the Note yet received payments therefrom, those payments may have been received unjustly". We believe that if in fact JPM fraudulently represented to the borrower that it did own or have rights to collect monies under the Note when in fact it did not, this would support a fraud-based claim as well.

The Court specifically found that "in the face of these specific factual allegations (by the borrower as to the securitization of the loan) JPMorgan's assertion that the P&A Agreement suffices to establish their ownership of the Note is no longer viable. Indeed, the P&A Agreement does not specifically identify Plaintiff's Note."

In the instant matter, Plaintiff was prejudiced by Defendants' assertion of the right to foreclose and maintaining the false Deed of Trust recorded against Plaintiff's property because the false Deed of Trust is the foundation for Defendants' attempts to complete a wrongful foreclosure of Plaintiffs' property and the foreclosure documents could simply be re-recorded should Plaintiffs' lawsuit be dismissed.  Without the improper and false Deed of Trust, these Defendants would not have initiated this foreclosure.  As the Court stated in *Tamburri*, 2011 WL 6294472 at *14, the fact that the wrong party initiated a foreclosure demonstrates prejudice to the Plaintiff:

California law requires strict compliance with non-judicial foreclosure statutes.  *Ung v. Koehler*, 135 Cal.App.4th 186, at 202–03, 37 Cal.Rptr.3d 311 (2005) ("The statutory requirements must be strictly complied with, and a trustee's sale based on statutorily deficient notice of default is invalid."). California courts have acknowledged that notices of default serve a vital purpose as the "crucial first step in the foreclosure process."  *Mabry v. Superior Court*, 185 Cal.App.4th 208, 221, 110 Cal.Rptr.3d 201 (2010).  Thus, assuming prejudice is required, the threat of foreclosure by the wrong party would certainly be sufficient to constitute prejudice to

the homeowner because there is no power of sale without a valid notice of default. *Castillo v. Skoba*, 2010 WL 3986953 at*2.

Plaintiffs' Deed of Trust limits appointment of successor trustees to the powers of the Lender and names the Lender in this case as World Savings. The Substitution of Trustee recorded on January 29, 2013 is invalid by the terms of Plaintiffs' Deed of Trust.

Here, there was never any valid Substitution of Trustee because Wells Fargo substituted NDEX in as Trustee, when Wells Fargo had no legal claim to the Lender or beneficial interest holder as there had been no legal conveyance to Wells Fargo recorded in the public record as of the time of recording the Substitution of Trustee.

The Substitution of Trustee in favor of NDEX is invalid for the aforementioned reasons, therefore, in recording the foreclosure documents including the December 7, 2012 NOD and the Notice of Trustee's Sale, NDEX and Wells Fargo and U.S. Bank attempted a wrongful foreclosure in violation of the above-referenced provisions of Plaintiffs' Deed of Trust.

### IV. Plaintiff Stated a Cause of Action for Lack of Standing and Wrongful Foreclosure

Plaintiffs alleged that the foreclosure process, was mishandled and therefore prevents Defendants from enforcing Plaintiffs' Deed of Trust because it is too late to correct these defects including violations of the California Civil Code, robo-signing, and violations of the terms of Plaintiffs' Deed of Trust.

Defendant U.S. Bank and Wells Fargo claim that Plaintiffs lack standing to challenge the foreclosure of their home and to seek injunctive relief because they have failed to tender the full amount due under the note. Without Plaintiffs making such an offer or payment, Defendants argue that the tender rule acts as a complete bar against all of Plaintiffs' causes of action, and thus all their claims should be dismissed. However, the requirement that a borrower seeking to set aside a foreclosure sale must first tender the full amount of the debt is not an absolute rule. In

the instant case, Plaintiffs are not precluded from pursuing their causes of action for failing to tender because it would be inequitable to require tender.

A cause of action to enjoin or set aside a trustee's sale is an action in equity. Miller & Starr California Real Estate 3d 10:212; *Tamburri v. Suntrust Mortgage, Inc*. (N.D. Cal. 2011) 2011 WL 6294472, *3. As courts have recognized, a rigid tender rule would often entirely preclude homeowners from challenging wrongful foreclosures. *Sacchi v. Mortgage Electronic Registration Systems, Inc*. (C.D. Cal. 2011) 2011 WL 2533029, *9. Like the Plaintiffs here, most homeowners do not have the funds necessary to pay off the entire balance of their loans at one time. If the tender rule was without exception, homeowners in danger of losing their home through, "error or malfeasance . . . would be unable to hold on to this most precious possession [home]. This would be a grossly inequitable result and would permit entities to foreclose on properties without impunity." *Sacchi*, 2011 WL 2533029 at *9.

To avoid this result, and contrary to what Defendant argues, California courts have recognized that an offer of "tender may not be required where it would be inequitable to do so." *Onofrio v. Rice* (1997) 55 Cal. App. 4th 413, 424 (affirming trial court's grant of relief to plaintiff on rescission claim although plaintiff failed to tender). See also *Lona v. Citibank, N.A*. (2011) 202 Cal. App. 4th 89, 113 ("a tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale"); *Sacchi*, 2011 WL 2533029 at *10; *Tamburri*, 2011 WL 6294472 at *3; *Humboldt Sav. Bank v. McCleverty* (1911) 161 Cal. 285, 291 (recognizing "cases holding that, where a party has the right to avoid a sale, he is not bound to tender any payment in redemption" adding that, "[w]hatever may be the correct rule, viewing the question generally, it is certainly not the law that an offer to pay the debt must be made, where it would be inequitable to exact such offer of the party complaining of the sale").

In the instant case, as *in Lona, Sacchi and Tamburri*, Plaintiffs should not be required to make a full tender offer because they are challenging that Defendants lacked the legal power to foreclose and requiring tender under these circumstances would be inequitable. Where, as here, the foreclosure initiated by Defendants is void due to the fact that the December 7, 2012 Notice

of Default and Election to Sell ("NOD") was signed by NDEX, not the true Trustee due to the intervening transfers to Wachovia and Wells Fargo and break in the chain of title. Because the NOD was signed by someone without authority and is thus false, it renders any subsequent foreclosure proceedings invalid.

Moreover, the December 7, 2012, NOD is invalid because NDEX executed the NOD, purportedly as Trustee, but NDEX was not in fact the Trustee under Plaintiffs' Deed of Trust on that date. The Substitution of Trustee was recorded on January 29, 2013, after the NOD was recorded. Therefore, NDEX had no authority to record the NOD as of December 7, 2012 rendering the NOD void and without any legal force or effect.

Plaintiffs are not required to tender the amount due to challenge this void foreclosure sale. *Tamburri*, 2011 WL 6294472 at *4 ("where a sale is void, rather than simply voidable, tender is not required"). As the Court found in *Dimock*, a Trustee's Deed issued by an entity who was not the correct Trustee is void. 81 Cal. App. 4th at 876; see also *Lona*, 202 Cal. App. 4th at 113.

The December 7, 2012 NOD is also false and invalid due to Defendants' failure to comply with the Notice and Contact requirements of California Civil Code Section 2923.5 which renders the NOD, false, and all subsequent proceedings based on said Notice, invalid and void, including the Trustee's Deed Upon Sale. See *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 236-37 (2010) (Notice of Default which fails to comply with Section 2923.5 is invalid and a non-judicial foreclosure may only proceed if a new, valid Notice of Default is recorded). The statement in the NOD recorded on December 7, 2012 of compliance with Section 2923.5 is false because Defendants U.S. Bank, Wells Fargo, and NDEX violated Section 2923.5 by failing to contact Plaintiffs, in person or by telephone, at least 30 days prior to recording the NOD on December 7, 2012 and/or recording a declaration attesting to compliance by a person with personal knowledge of these facts. There is no statement in the NOD recorded December 7, 2012 stating with personal knowledge that someone tried with due diligence to contact the borrower as required under Section 2923.5 and Defendants failed to exercise due diligence in attempting to contact Plaintiffs as required by Section 2923.5, and Plaintiffs were never contacted. Furthermore,

neither U.S. Bank nor Wells Fargo was neither the true beneficiary or the servicer due to the lack of specificity in bank merger documents and breaches of the DOT, therefore any declaration issued pursuant to Section 2923.5 is insufficient.

### V.   Plaintiffs State Facts Sufficient to Constitute a RICO Violation

In *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268 (1992), the Court "held that a plaintiff may sue under § 1964(c) . . . if the alleged RICO violation was the proximate cause of the plaintiff's injury," Anza, slip op. at 1, which it distilled from § 1964(c)'s "by reason of" language, id. at 4. Abjuring a broad statutory interpretation "requir[ing] merely that the claimed violation was a 'but for' cause of the plaintiff's injury," the Court read § 1964(c) as demanding "some direct relation between the injury asserted and the injurious conduct alleged." *Id*. at 4-5 (quoting *Holmes*, 503 U.S. at 265- 268) (emphasis added).

Ultimately finding too great an "attenuation" between the claimed RICO § 1962(c) violation and injury in Anza, the Supreme Court reversed, explaining that the "proper referent of the proximate-cause analysis is an alleged practice of conducting National's business through a pattern of defrauding the State." *Id*. at 5-6.3 Stressing the need in a private RICO action to connect "plaintiff's harm and the claimed RICO violation," the Court held:

To be sure, Ideal asserts it suffered its own harms when the Anzas failed to charge customers for the applicable sales tax. The cause of Ideal's asserted harms, however, is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the state). *Id*. at 6 (emphasis added). Noting that a "RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense," *id*. at 9, the Supreme Court advised bench and bar:  When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries. *Anza v. Ideal Steel Supply Corp*.,No. 04-433, 547 U.S. __ (2006).

In the instant matter, Plaintiffs audit indicates Defendants causation of the continuing harm of slander of title and correlating causes of action stated herein as a result of the fraudulent use of robo-signers, breaches of Plaintiffs' Deed of Trust and the PSA for the securitized trust, and breaches of California state and federal law. The actions Plaintiffs complain of herein and evidenced in Plaintiffs' audit include:

1)      Wells Fargo's assertion of rights as Servicer without legal authority;

2)      Failing to evidence chain of title possession and indebtedness;

3)      Failing to properly substitute foreclosing trustee (Ex. B, p. 12);

4)      Purporting to transfer beneficial interest without endorsement or assignment.

And Plaintiffs have alleged damages resulting therefrom in Plaintiffs' FAC including pecuniary damages as a result of Defendants' breaches of Plaintiffs' Deed of Trust and the wrongful sale of Plaintiffs' Deed of Trust to the securitized trust because the false recorded documents disclose a claim of right, title or interest in the subject property which gives rise to a need for policy endorsements for title insurance, settlement of a claim shown on a title report, and/or a significant dissuasive factor for any prospective purchaser inspecting the property for sale, and/or its disclosures, any and all of which factors negatively affected and continue to affect the purchase price and vendibility of the Subject Property in an amount to be proven at trial. Therefore, Defendant's demurrer to Plaintiffs' cause of action for violation of 18 U.S.C. § 1962 should be overruled.

**VI.     Plaintiffs State Facts Sufficient to Support a Cause of Action for Unfair and Deceptive Business Act Practices**

Defendant also asserts that Plaintiffs' cause of action for unfair and deceptive acts and practices ("UDAP"), codified at California Code of Civil Procedure §§ 1750 – 1784 (the Consumer Legal Remedies Act) and the Unfair Business Practices Act, Cal. Bus. & Prof. Code §§ 17200 through 17594, must fail because Plaintiffs have not alleged any violations due to

Defendant being only a loan servicer.  UDAP is a derivative cause of action and Plaintiffs' ability to pursue this cause of action depends on the success or failure of their substantive causes of action.  See *Tamburri*, 2011 WL 6294472 at *18.  However, as discussed above, Plaintiffs have alleged sufficient facts to dispute whether JPMorgan acted only as a servicer.

Moreover, as discussed herein, Plaintiffs have also alleged sufficient facts to serve as the necessary underlying unfair business practice for their Section 17200 claim.

Here, there was never any recording assigning a power of sale to the foreclosing entity on the Notice of Default recorded on December 7, 2012 as Document No. 21990664 in the files of the Santa Clara County Recorder's Office by NDEX.

According to this Notice of Default, NDEX purports to act as agent for the Wells Fargo, servicer and/or purporting to be beneficiary.

However there is no legal substitution on record in favor of NDEX.  Further, there is no other valid, recorded document giving Defendants Wells Fargo and/or U.S. Bank, ownership of the beneficial interest under Plaintiffs' Deed of Trust.  In the absence of such a document in the public chain of title, Defendants lack the power of sale.  Thus, any attempted sale of Plaintiffs' property on behalf of Defendants Wells Fargo, U.S. Bankor any other purported trustee would be invalid and wrongful.

For the reasons stated above, there is a likelihood that Plaintiffs will prevail on the merits of their wrongful foreclosure claim.  If Defendants are permitted to rely on void and wrongful Substitution of Trustee, and void NOD and NOTS to complete this foreclosure process by conducting a Trustee's sale and issuing a Trustee's Deed Upon Sale, Plaintiffs will wrongfully lose their home.  Such injury is irreparable and cannot be adequately compensated by financial means.  Moreover, real property is considered unique in California, and monetary damages are deemed inadequate to compensate Plaintiffs for the loss thereof.  *Stockton v. Newman*, 148 Cal. App. 2d 558, 564 (1957).

Therefore, the foreclosure is invalid, and Defendant's motion should be denied.

### VII. Conclusion

Plaintiffs respectfully request that the Court overrule WELLS FARGO'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM and further respectfully requests that if the Court sustains the Motion, then the Court grant Plaintiffs further leave to amend the Complaint.

DATED: April 29, 2013           Respectfully submitted,


                                 ___/s/ Megan Dailey_____
                                 Megan Dailey
                                 Attorney for Plaintiffs, LORETO G. CEREZO and
                                 NIDA F. CEREZO

OPPOSITION TO WELLS FARGO'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM - 15