**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LORETO CEREZO and NIDA CEREZO,<br><br>               Plaintiffs,<br><br>      v.<br><br>WELLS FARGO BANK, N.A., et al,<br><br>               Defendants. | Case No.: 13-1540 PSG<br><br>**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS**<br><br>**(Re: Docket No. 8)** |

      In this foreclosure-related action, Defendant Wells Fargo, N.A., et al, ("Wells Fargo") move to dismiss the complaint filed by Plaintiffs Loreto and Nida Cerezo ("Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(6). Pursuant to Civ. L.R. 7-1(b), the court found oral argument was unnecessary to resolution of this motion. Having reviewed papers, the court GRANTS-IN-PART Wells Fargo's motion.

## I.        BACKGROUND

      Unless otherwise noted, the court draws the following facts from Plaintiffs' complaint. On January 19, 2006, Plaintiffs recorded a deed of trust ("DOT") in Santa Clara County against the property at 3125 Woods Way, San Jose, California (the "Subject Property") to secure a promissory

Case No.: 13-1540 PSG
**ORDER**

note (the "Note") in the amount of $628,000.  The DOT listed World Savings Bank, FSB ("World Savings") as the lender and Golden Savings Associated Service Co. ("Golden") as the trustee.

Plaintiffs allege that World Savings securitized and sold the beneficial interest in the DOT to a mortgage-backed securities trust.  But in 2006 or 2007, Wachovia Mortgage, FSB ("Wachovia") acquired World Savings' assets including the DOT, despite the earlier sale by World Savings.  Wachovia, in turn, also securitized and sold the beneficial interest to the Wachovia Mortgage Loan Trust Series 2006-ALT1 Trust ("Loan Trust").[1]  According to Plaintiffs, after the Wachovia securitization, Wachovia retained only servicing rights on the DOT.  At some point Wells Fargo acquired Wachovia and currently claims the right to foreclose on the Subject Property.

On December 7, 2012, a notice of default and election to sell under the deed of trust ("NOD") was recorded in Santa Clara County.  Meriel Lee ("Lee"), representing herself as an employee of NDEX West, LLC ("NDEX"), signed the NOD as an agent for Wells Fargo, the named beneficiary of the DOT.  On or around January 2, 2013, a substitution of trustee was recorded in Santa Clara County and was signed by Rick Juarez, purportedly as Assistant Vice President of Wells Fargo.  A notice of trustee's sale ("NOTS") was filed sometime after the NOD and a trustee's sale was scheduled for March 16, 2013.

Relying on these factual allegations, Plaintiffs filed a suit in Santa Clara County Superior Court for several causes of action: breach of express agreement, breach of implied agreement, slander of title, violation of Cal. Civ. Code § 2923.5, wrongful foreclosure, violations of the

---

[1] Wells Fargo disputes that any securitization of the underlying promissory note occurred and asserts that once this fact was pointed out to Plaintiffs, they dismissed U.S. Bank from the case. *See* Docket No. 6.  The court accepts Plaintiffs' allegations regarding securitization of the loan as true for the purposes of this motion but cautions Plaintiffs, and especially their counsel, that asserting factual allegations that have no plausible support suggests behavior in violation of the obligations under Fed. R. Civ. P. 11, which requires after "an inquiry reasonable under the circumstances" that factual allegations "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation and discovery."  In any future amendments, Plaintiffs and their counsel would be wise to assert only facts that they believe they can support with evidence.  Failure to do so exposes them to sanctions. *See* Fed. R. Civ. P. 11(c).

Case No.: 13-1540 PSG
**ORDER**

United States District Court
For the Northern District of California

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and violations of Cal. Bus. & Prof. Code § 17200.  Wells Fargo removed to this court and filed this motion to dismiss.

## II.   LEGAL STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[2] If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[3] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[4] Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged in the complaint, "[d]ismissal can based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[5]

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[6] The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[7] However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[8]

---

[2] Fed. R. Civ. P. 8(a)(2).

[3] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[5] *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

[6] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

[7] *See id.* at 1061.

[8] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); s*ee also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

Case No.: 13-1540 PSG
**ORDER**

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment."[9]

## III.    DISCUSSION

**A.    Preemption by HOLA**

Wells Fargo argues that the Home Owner's Loan Act ("HOLA"), 12 U.S.C. § 1464, preempts all of Plaintiffs' claims because the bases for their claims involve lending practices that for federally-chartered banks are the exclusive province of the Office of Thrift Supervision ("OTS").  Plaintiffs respond that HOLA does not preempt their claims because Wells Fargo is not a federally-chartered institution and in any event the claims fall under HOLA's savings provision.[10]

Congress passed HOLA in 1933 in an era reminiscent of the recent turmoil in the housing market.  Responding to "record numbers of home loans . . .  in default and a staggering number of state-chartered savings associations [that] were insolvent," Congress implemented HOLA with the goal of "restor[ing] public confidence by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide 'best practices.'"[11]  Part and parcel with that central regulation, Congress provided OTS with "broad authority to issue regulations governing thrifts,"[12] which OTS in turn employed to occupy "the entire field of lending regulation for federal savings associations."[13]  Noting its intent "to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation," OTS authorized federal savings associations to "extend credit as authorized under

---

[9] *Eminence Capital, LLC v. Asopeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[10] *See* 12 C.F.R. § 560.2(c).

[11] *Silvas v. E*Trade Mortg. Corp*, 514 F.3d 1001, 1004 (9th Cir. 2008).

[12] *Id.* (citing 12 U.S.C. § 1464).

[13] 12 C.F.R. § 560.2(a).

4

Case No.: 13-1540 PSG
**ORDER**

federal law . . . without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in" the regulation.[14]

Section 560.2, which defines the scope of HOLA, delineates several examples of the types of state laws that are preempted, including laws governing

> [d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants[15] [and]

> [p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.[16]

The regulation also lists types of state laws, including contract and commercial law, real property law, and tort law, that are not preempted "to the extent that they only incidentally affect the lending operations of federal savings associations or are otherwise consistent with the purposes of" OTS's regulations.[17]

In determining whether HOLA preempts a state law, courts follow the two-part inquiry outlined by OTS[18] and endorsed by the Ninth Circuit.[19] "[T]he first step will be to determine whether the type of law in question is listed in" Section 560.2(b), and if so, "the analysis will end there; the law is preempted."[20] If not, "the next question is whether the law affects lending."[21] If so, "the presumption arises that the law is preempted," and that presumption can only be rebutted

---

[14] *Id.*

[15] 12 C.F.R. § 560.2(b)(9).

[16] *Id.* § 560.2(b)(10).

[17] *Id.* § 560.2(c).

[18] OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996).

[19] *See Silvas*, 514 F.3d at 1006.

[20] *Id.*

[21] *Id.*

Case No.: 13-1540 PSG
**ORDER**

"if the law can clearly be shown to fit within the confines of" Section 560.2(c).[22]   Section 560.2(c) "is intended to be interpreted narrowly" and so "[a]ny doubt should be resolved in favor of preemption."[23]

Before the court reaches the question of whether HOLA preempts Plaintiffs' claims, it first must resolve whether Wells Fargo, which is not a federally-chartered institution, is entitled to claim the preemptive powers of HOLA.  This court and many others in this district have held that the status of the originator of the loan determines the applicability of HOLA to a particular loan,[24] but a few courts have more recently questioned the logic of applying HOLA to a successor party such as Wells Fargo, especially when the conduct at the heart of the action arises after the loan has changed hands.[25]  One court noted that as authority for applying HOLA broadly to loans originating with a federally-chartered institution, "courts generally cite 'either (a) nothing, (b) each other, or (c) generic statements of law about corporations succeeding to the rights of the entities they acquire.'"[26]  In response, some courts have applied HOLA only to activities arising before the loan changes hands from the federally-chartered institution to a bank not governed by HOLA.[27]

As appealing as the bright line methods of applying HOLA wholesale to any successor in interest to a federal savings association or of setting a cut-off date after which HOLA no longer

---

[22] *Id.*

[23] *Id.*

[24] *See, e.g. Cockrell v. Wells Fargo Bank, N.A.*, Case No. CV 13-2072 SC, 2013 WL 3830048, at *3 (N.D. Cal. July 23, 2013); *Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961, 971 (N.D. Cal. 2010).

[25] *See, e.g.*, *H Hopkins v. Wells Fargo Bank, N.A.*, Case No. CIV. 2:13-04444 WBS JFM, 2013 WL 2253837, at *3 (E.D. Cal. May 22, 2013); *Rodriguez v. U.S. Bank Nat. Ass'n*, Case No. 12-00989 WHA, 2012 WL 1996929, at *7 (N.D. Cal. June 4, 2012); *Valtierra v. Wells Fargo Bank Bank, N.A.*, Case No. 1:10-0849, 2011 WL 590596, at *4 (E.D. Cal. Feb. 10, 2011).

[26] *Hopkins*, 2013 WL 2253837, at *3 (quoting *Gerber v. Wells Fargo Bank, N.A.*, Case No. 11-1083 PHX NVW, 2012 WL 413997, at *4 (D.Ariz. Feb. 9, 2012)).

[27] *See, e.g.*, *Hopkins*, 2013 WL 2253837, at *3; *Rodriguez*, 2012 WL 1996929, at *7.

Case No.: 13-1540 PSG
**ORDER**

United States District Court
For the Northern District of California

applies may be, the undersigned is not convinced that either of these rules provides a complete picture of how HOLA preemption should be applied.[28]  The crucial factor would appear to be not only whose conduct is at issue but whether the conduct derives from the successor's own practices or from its obligations under documents and instruments originally drafted by an institution regulated by HOLA.  If the cause of action arises out of activities in which the federal savings association engaged, those actions most likely would fall within HOLA.   If the conduct at issue is not the federal savings association's but rather the successor's, the question to resolve would seem to be whether the action stems from the successor's obligations on instruments originating from the HOLA-governed bank or whether the successor is acting independently of any requirements from the instruments.

The parties have not provided to the court sufficient briefing to resolve this issue and so the court leaves for another day the best method of defining HOLA preemption.  As explained in detail below, based on the court's analysis of Plaintiffs' complaint, the causes of action fail as pleaded for failure to state a claim.  The court thus does not address further the preemption issue but invites the parties in any subsequent motions regarding the claims to address this issue further.

**B.      Breach of Express Agreements**

Plaintiffs allege that Defendants breached the Deed of Trust and a PSA.  To state a claim for breach of an express agreement, Plaintiffs must allege (1) "the contract," (2) their "performance or excuse for nonperformance," (3) Wells Fargo's breach, and (4) damage to Plaintiffs from the

---

[28] Absent from any of these cases and from the parties' briefs in this case is the extent to which a successor such as Wells Fargo is or is not regulated by HOLA because it has inherited instruments originally governed by the statute and its implementing regulations.  If Wells Fargo remains bound to the HOLA regulations despite not being a federal savings association, extending HOLA's preemption would seem to be appropriate.  If not, Wells Fargo ends up benefitting from not having to comply with the practices that OTS sets for federal savings associations while also being shielded from any state attempts to govern its actions.  The court doubts that Congress or the OTS intended HOLA preemption to be deployed in that manner.

Case No.: 13-1540 PSG
**ORDER**

breach.[29]   As to the DOT allegation, even assuming it serves as a contract, Plaintiffs fail to allege that they performed their obligations or provide any excuse for nonperformance of their obligations. A separate issue arises from Plaintiffs' allegations because they argue that after the securitization of the loan, Wells Fargo was no longer a party to the DOT.  Assuming that is true, Wells Fargo could hardly breach a purported contract to which they were no longer a party. Even by Plaintiffs' own allegations, the claim fails.

The PSA breach claim likewise fails.  Plaintiffs assert that they are third-party beneficiaries to the PSA, although they do not offer any provision from the PSA suggesting that they are entitled to that status.  That set of factual allegations is insufficient under a breach of express contract theory.  Because both theories fail, the motion to dismiss is GRANTED.  In their opposition, Plaintiffs offer numerous arguments about securitization of loans and improper foreclosure, none of which suggest that they can amend their claim to allege a breach of express agreement claim. Despite this deficiency, the court finds that the liberality with which the Ninth Circuit interprets Rule 15(a) requires allowing Plaintiffs at least one more opportunity to try to plead this claim.  The breach-of-express-agreement claims are DISMISSED WITH LEAVE TO AMEND.

## C.   Breach of Implied Agreement

Plaintiffs next allege that Wells Fargo created some kind of indemnification obligation to them that Wells Fargo in turn breached.  Plaintiffs also allege that Wells Fargo "invoked the power of sale without notice" as required by the DOT.  As an initial matter, this second allegation would appear to be a breach of an express agreement; Plaintiffs have not explained how a violation of the DOT would be an implied agreement.  Even if Plaintiffs' assertion somehow involved an implied agreement, Plaintiffs appear to confuse the power of sale of the property with the power of sale of the debt instrument, the promissory note.  Plaintiffs have not alleged that the property in fact has

---

[29] *Wall Street Network, Ltd. v. N.Y. Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008).

Case No.: 13-1540 PSG
**ORDER**

United States District Court
For the Northern District of California

been sold, and in fact point to the potential loss of title as a harm from the breach of the "implied agreement."[30]

As to the indemnification agreement that Plaintiffs allege Wells Fargo breached, their factual allegations fail to support the existence of an implied agreement because they reveal nothing about the nature of this agreement or how it was reached between the parties.  They solely rely on an allegation of the "contractual relationship" with Wells Fargo and with their claim that they are a "third-party beneficiary to the PSA" to insist Wells Fargo has an indemnification obligation to them.[31]  But these "allegations" are merely legal conclusions, which the court need not accept as true.[32]  Plaintiffs offer no facts that support those conclusions, and so dismissal of their claim is warranted.  Again, in light of the liberality of Rule 15(a), the court permits Plaintiffs to try to amend these claims with factual allegations that support their claims.  The breach-of-implied-agreement claim is DISMISSED WITH LEAVE TO AMEND.

**D.      Slander of Title**

Plaintiffs next allege slander of title in connection with the NOD, NOTS, and the substitution of trustee.  Slander of title "occurs when a person, without a privilege to do so, publishes a false statement that disparages title to property and causes pecuniary loss."[33] "The recordation of an instrument facially valid but without underlying merit will give rise to an action for slander of title."[34]  To state a claim for slander of title, Plaintiffs must allege: "1) a publication,

---

[30] *See* Docket No. 1-1 ¶ 32.

[31] *Id.* ¶ 30.

[32] *Iqbal*, 556 U.S. at 663.

[33] *Truck Ins. Exchange v. Bennett*, 53 Cal. App. 4th 75, 85 (1997).

[34] *Stamas v. City of Madera*, 795 F. Supp. 2d 1047, 1068 (E.D. Cal. 2011) (citing *Seely v. Seymour*, 190 Cal. App. 3d 844, 857 (1987)). *See also Ogilvie v. Select Portfolio Servicing*, 12-CV-001654-DMR, 2012 WL 3010986, at *3 (N.D. Cal. July 23, 2012).

Case No.: 13-1540 PSG
**ORDER**

2) which is without privilege or justification, 3) which is false, and 4) which causes direct and immediate pecuniary loss."[35]

Wells Fargo argues that the recorded documents were not false, that the documents in any event were privileged,[36] and that Plaintiffs have failed to allege financial harm.  Wells Fargo also challenges Plaintiffs' assertions that the purportedly false statements in the documents were made with malice, a requirement for overcoming their privileged status.  In their opposition, Plaintiffs fail to address directly the slander of title claim and how their allegations satisfy the elements. They instead assert that they have alleged sufficient facts to challenge Wells Fargo's standing to initiate the foreclosure.  The court nevertheless evaluates the complaint in light of Wells Fargo's arguments to determine whether the allegations support Plaintiffs' claim.

As an initial matter, to the extent Plaintiffs believe they can challenge the standing of either Wells Fargo or NDEX to initiate foreclosure through litigation, California courts have rejected this practice.[37]  They may only raise arguments regarding the propriety of Wells Fargo initiating foreclosure in terms of a separate cause of action.

As to the slander of title claim, Plaintiffs satisfactorily allege publication – recording documents necessarily publishes them.  For falsity, Plaintiffs assert that Lee was not an employee of NDEX, on whose behalf she signed the NOD, but rather was an employee of Wells Fargo.[38] They also assert that the declaration regarding Cal. Civ. Code § 2923.5, which is required with a notice of default, was false because an employee of Wells Fargo rather than employee of NDEX

---

[35] *Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal. App. 4th 1040, 1051 (2009).

[36] *See* Cal. Civ. Code § 47(c)(1); Cal. Civ. Code § 2924(d)(1).

[37] *See Gomes*, 192 Cal. App. 4th at 1154 (holding that Cal. Civ. Code § 2924 does not provide for judicial action in order to determinate whether a nominee is authorized to initiate foreclosure on behalf of the noteholder); *Herrera v. Fed. Nat. Mortg. Ass'n*, 205 Cal. App. 4th 1495, 1506 (2012).

[38] *See* Docket No. 1-1 at ¶ 37.

Case No.: 13-1540 PSG
**ORDER**

signed that declaration.[39]  Plaintiffs further allege that the substitution of trustee likewise was invalid because Juarez, who signed the document, is not an employee of Wells Fargo.[40]  Plaintiffs assert that he is an employee of U.S. Bank and a "robo-signer."[41]  These allegations suffice to meet the falsity element because they support a claim that the documents make false representations.

To show lack of privilege (i.e. malice), Plaintiffs allege that Wells Fargo's attempt to substitute a trustee and to initiate the foreclosure when it did not have the requisite beneficial interest to do so – and knew it did not have that interest – amounts to reckless disregard of the truth.  These allegations pass muster because they assert that Wells Fargo knew it did not have the requisite status to engage in the foreclosure process.

As to pecuniary harm, Plaintiffs allege three sources of harm: (1) impairment to the vendibility of the Subject Property; (2) Plaintiffs' mortgage payments to Wells Fargo even though Wells Fargo did not own the Note; and (3) attorneys' fees for having to bring this action.  The vendibility claim is insufficient because Plaintiffs have not alleged any impending sale.  The attorneys' fees claim likewise fails because they do not bring a quiet title action to remove any cloud from the title.  Attorneys' fees arising from a quiet title action may be used to show harm; fees from the prosecution of the slander of title action may not.[42]  The allegedly misdirected mortgage payments also do not suffice because the purported harm did not arise from the allegedly false publications.  Plaintiffs' claim about the mortgage payments arises from the alleged securitization of the loan and the fact that Wells Fargo did not have the beneficial interest to collect mortgage payments, not from the NOD or the NOTS.

---

[39] *See id.* at ¶ 29.

[40] *See id.* at ¶ 42.

[41] *See id.*

[42] *See Ogilvie*, 2012 WL 3010986, at *4.

11

Case No.: 13-1540 PSG
**ORDER**

United States District Court
For the Northern District of California

The slander of title claim is DISMISSED WITH LEAVE TO AMEND.

**E.      California Civil Code § 2923.5**

Wells Fargo challenges this claim on the grounds that Plaintiffs fail to allege the Subject Property is owner-occupied as required by the Section 2923.5 and that Section 2923.5 does not require that the declaration be signed by someone with personal knowledge about Wells Fargo's compliance actions.  Plaintiffs respond with a reiteration of their complaint, in essence that Wells Fargo failed to contact them 30 days before the NOD was filed and that a "robo-signer" signed the declaration of compliance, rendering the document false.

This court and several others have found that Section 2923.5 is preempted by HOLA,[43] but as the court explained in detail above, the application of HOLA to Wells Fargo is an issue that requires further briefing than either of the parties have provided.  The court's determination here, therefore, is without prejudice to any subsequent claim of preemption that Wells Fargo may bring with the requisite arguments about the application of preemption to this loan, depending of course on that outcome.

Section 2923.5[44] requires "mortgagee[s], beneficiar[ies], or authorized agent[s]" to "contact the borrower in person or by telephone in order to assess the borrower's financial situation and

---

[43] *See, e.g., Nguyen v. JP Morgan Chase Bank N.A.*, Case No. 12-cv-4183 PSG, 2013 WL 2146606, at *6 (N.D. Cal. May 15, 2013); *Varela v. Wells Fargo Home Mortg.*, Case No. C-12-3502 KAW, 2012 WL 6680261, at *6 (N.D. Cal. Dec. 21, 2012) (quoting 12 C.F.R. §560.2(b)(10)); *see also Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F.Supp.2d 1022, 1033 (N.D. Cal. Oct. 27, 2010), *DeLeon v. Wells Fargo Bank, N.A.*, 729 F.Supp.2d 1119, 1127 (N.D. Cal. 2010) (collecting cases with similar holdings), *Parcray v. Shea Mortg., Inc.*, Case No. CV-F-09-1942 OWW/GSA, 2010 WL 1659369, at *9 (E.D. Cal. Apr. 23, 2010) (concluding that HOLA preempts section 2923.5 because it "concerns the processing and servicing of [the plaintiff]'s mortgage").

[44] The California Legislature amended Section 2923.5 to add new requirements for notices of default filed after January 1, 2013.  *See* S.B. 900, 2011-2012 Leg., Reg. Sess. (Cal. 2012).  Because the NOD at issue here was filed before that date, the court looks to the earlier version of Section 2923.5.  *See* S.B. 306, 2009-2010 Leg., Reg. Sess. (Cal. 2009).

12

Case No.: 13-1540 PSG
**ORDER**

explore options for the borrower to avoid foreclosure."[45]  "A mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to Section 2924 until 30 days after [this] initial contact."[46]  It also provides that a notice of default nevertheless may be filed if the mortgagee, beneficiary, or authorized agent employed due diligence to attempt to contact the borrower but was unable to do so.[47]  The statute defines "due diligence" as a series of steps taken to attempt to reach the borrower, including telephone calls, certified letters, and posts on the lenders' website.[48]  Section 2923.5 applies only to "owner-occupied residential real property."[49]

Although it is true that Plaintiffs fail to allege that they are owners-occupiers of the Subject Property, the declaration of compliance attached to the NOD – for which Wells Fargo requests judicial notice – indicates that Wells Fargo attempted to reach Plaintiffs and despite its due diligence was unable to do so.[50]  Even though Wells Fargo had the option to state that the property was not "owner-occupied" and so Section 2923.5 did not apply, it did not so indicate.[51]  And so, despite the deficiency in the complaint, given that Wells Fargo has requested that the court take notice of a document that suggests Wells Fargo in fact believed the Subject Property was owner-occupied, the court does not dismiss this claim on those grounds.

The court, however, rejects Plaintiffs' claim that a person with personal knowledge of the actions taken in compliance with Section 2923.5 needs to sign the declaration or that the declaration failed to include the proper beneficiary of the Note.  Section 2923.5 does not require

---

[45] Cal. Civ. Code § 2923.5(a)(2).

[46] *Id.* § 2923.5(a)(1).

[47] *Id.* § 2923.5(g).

[48] *Id.* § 2923.5(g)(1)-(5).

[49] *Id.* § 2923.5(i).

[50] *See* Docket No. 9 Ex. B.

[51] *See id.*

Case No.: 13-1540 PSG
**ORDER**

that a person with personal knowledge sign the declaration,[52] and Plaintiffs have not sufficiently alleged how any misidentification of the beneficiary on the declaration prejudiced them.[53]  But because Plaintiffs allege that Wells Fargo never contacted them before filing the NOD, the allegations suffice.

Although dismissal at this stage is not appropriate, the court notes that the remedy Plaintiffs seek for the alleged violation of Section 2923.5 is an injunction preventing Wells Fargo from attempting to dispossess them from the Subject Property.  The only available remedy for violations of Section 2923.5 is a delay in the foreclosure until compliance.[54]  But because the foreclosure sale has not yet occurred, if Plaintiffs prevail on the merits,[55] they may be entitled to that delay.  As such, the motion to dismiss is DENIED.

## E.   Wrongful Foreclosure

Wrongful foreclosure is an action in equity in which the mortgagor or trustor seeks to unwind an "illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust" – or to prevent such a sale from occurring.[56]  A plaintiff must demonstrate prejudice or harm and, depending on whether the plaintiff is challenging a sale or seeking to prevent a pending sale, may be required to tender payment of the debt, or at least to allege the ability to tender payment.[57]

_____

[52] *See Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1186 (N.D. Cal. 2009).

[53] *See id.* (noting that courts "have rejected claims of deficient notice where no prejudice was suffered as the result of a procedural irregularity").

[54] *See Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 887 (N.D. Cal. 2011).

[55] And if their claim is not preempted by HOLA.

[56] *Permito v. Wells Fargo Bank, N.A.*, Case No. C-12-00545 YGR, 2012 WL 1380322, at *3 (N.D. Cal. Apr. 20, 2012) (quoting *Lona v. Citibank N.A.*, 202 Cal. App. 4th  89, 104 (2011)).

[57] There is some division in the courts as to whether the "tender rule" precludes a claimant from seeking to prevent a pending nonjudicial foreclosure, as opposed to attempting to "unwind" a

Case No.: 13-1540 PSG
**ORDER**

The court initially must note that Plaintiffs do not allege that a sale of the Property has taken place and do not allege that they have tendered the full amount of their outstanding obligation.  Wells Fargo asserts that these two factors are dispositive.  According to Wells Fargo, because no sale has occurred, the claim is not ripe, and because Plaintiffs have not alleged their ability to tender the outstanding debt, they are precluded from bringing a wrongful foreclosure claim.  Plaintiffs counter that they should not be required to allege tender because their claim fits within an exception to the tender rule.

Courts have recognized various exceptions to the tender rule, including based on an allegation that a foreclosure sale is totally void and not merely voidable due to, for example, a notice error.[58]  Under these circumstances, the court cannot find error in Plaintiffs' failure to allege compliance with the tender rule.  As to the ripeness argument, this court and others have held that an impending foreclosure sale is sufficient to state a wrongful foreclosure claim.[59]  Here, given the NOD and the NOTS, Plaintiffs' claim is ripe.

A the heart of Plaintiffs' claim is an allegation that neither NDEX nor Wells Fargo had the authority to invoke the power of sale or right to foreclose because World Savings/Wachovia

---

foreclosure that has taken place. *See Rodriguez v. Bank of America*, No. C 11–3839–PSG, 2011 WL 5864108, at *3 (N.D. Cal. Nov. 22, 2011). *Cf. Silva-Pearson v. BAC Home Loans Servicing, LP*, No. C 11-1491 SI, 2011 WL 2633406, at *2 (N.D. Cal. July 6, 2011) (finding no basis for the "tender rule" in an action challenging a pending foreclosure, as opposed to the commonly-cited line of cases requiring tender based on an attempt to set aside foreclosure); *Yazdanpanah v. Sacramento Valley Mortg. Group*, Case No. C 09-2024 SBA, 2009 WL 4573381, at *7 (N.D. Cal. Dec. 1, 2009) (dismissing claim for wrongful foreclosure on grounds that "debtor must allege a credible tender of the amount of the secure debt" regardless of pending or past status of foreclosure).

[58] *See Tamburri v. Suntrust Mortg., Inc.*, No. C-11-2899-EMC, 2011 WL 6294472, at *4-5 (N.D. Cal. Dec. 15, 2011) (finding multiple "exceptions and qualifications counsel against a blanket requirement of the tender rule at the pleading stage" based on a review of state and federal case law). *See also Ogilvie*, 2012 WL 3010986, at *6 (declining to apply the tender rule at the early pleading stage); *ING Bank v. Ahn*, No. C-09-995-TEH, 2009 WL 20893965, at *2 (N.D. Cal. July 13, 2009) (same).

[59] *See Patel v. U.S. Bank, N.A.*, Case No. C 13-748 PSG, 2013 WL 3770836, at *7 (N.D. Cal. July 16, 2013); *Tamburri*, 2011 WL 6294472, at *14.

15

Case No.: 13-1540 PSG
**ORDER**

effectively disposed of the beneficial interest in the Note before any transfer to Wells Fargo. Plaintiffs further assert that NDEX could not be substituted as the trustee because Wells Fargo, which did the substitution, lacked the power to transfer the trustee position.  Wells Fargo challenges this proposition on the grounds that the right to foreclose is not lost upon securitization of the promissory note.

It is true that other courts have held that securitization of the promissory note does not result in loss of the power of sale under a deed of trust.[60]  But after having reviewed those cases, the court does not agree that despite the sale of the beneficial interest in a promissory note (essentially proceeds from the mortgage) the seller of the interest somehow retains the rights to foreclose on property (the consequence from failing to pay the mortgage).  Assuming the securitization occurred, as the court must at this stage, Plaintiffs have sufficiently alleged World Savings/Wachovia had no beneficial interest to transfer to Wells Fargo, and so Wells Fargo had no right to appoint NDEX as a new trustee, and NDEX had no right to initiate foreclosure proceedings.

As to prejudice or harm, Plaintiffs allege that if Wells Fargo proceeds with the foreclosure sale, Plaintiffs will be subject to the wrongful loss of their home.[61]  Wells Fargo has not challenged this allegation as inadequate. As expressed by the court in *Tamburri*, "the threat of foreclosure by the wrong party would certainly be sufficient to constitute prejudice to the homeowner because there is no power of sale without a valid notice of default."[62] The prospect of wrongful foreclosure

---

[60] *See, e.g., Lane v. Vitek Real Estate Indus. Group*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010); *Benham v. Aurora Loan Servs.*, 2009 WL 2880232, at *3 (N.D. Cal. Sept. 1, 2009).

[61] *See* Docket No. 1-1 at ¶ 78.

[62] *Tamburri*, 2011 WL 6294472 at *14 (citing *Castillo v. Skoba*, No. 10cv1838 BTM, 2010 WL 3986953, at *2 (S.D. Cal. Oct. 8, 2010) ("The power of sale in a nonjudicial foreclosure may only be exercised when a notice of default has first been recorded.... [A]ny foreclosure sale based on a void notice of default is also void.") (citing Cal. Civ. Code § 2924; 5–123 California Real Estate Law & Practice § 123.01).

Case No.: 13-1540 PSG
**ORDER**

stemming from the issuance of foreclosure not grounded in a valid, beneficial interest is thus sufficient.

In sum, because Plaintiffs have stated a facially plausible claim that the nonjudicial foreclosure process was not founded on a valid, beneficial interest they may pursue their wrongful foreclosure claim.

## F.   RICO

Plaintiffs allege that Wells Fargo violated 18 U.S.C. § 1962, although they do not specify under which section the claims arise.  They refer specifically only to Section 1962(d),[63] which prohibits conspiring to violate Sections 1962(a), 1962(b), and 1962(c), although Plaintiffs do not state which of the sections they claim Wells Fargo conspired to violate.  The allegations also suggest that Wells Fargo engaged in activity prohibited by Section 1962(a), and so the court considers the allegations under the rubrics of both Section 1962(a) and Section 1962(d).  In either case, the claims fail.

To state a claim under Section 1962(a), Plaintiffs must allege that (1) "a person receives income derived directly or indirectly form a pattern of racketeering activity or unlawful debt"; (2) "that person uses or invests, directly or indirectly, any part or proceeds of such income in the acquisition of any interest in, or the establishment or operation of any enterprise"; and (3) "that enterprise is engaged in or its activities affect interstate or foreign commerce."[64]  Plaintiffs must also allege "that the investment of racketeering income was the proximate cause of his injury."[65] To state a claim under Section 1962(d), on the other hand, they need not allege any action in

---

[63] *See* Docket No. 36 at ¶ 85.

[64] *Jalili v. Far East Nat. Bank*, Case No. C 12-5962 SBA, 2013 WL 1832648, at *3 (N.D. Cal. May 1, 2013).

[65] *Id.*

Case No.: 13-1540 PSG
**ORDER**

1   furtherance of a RICO violation.[66]  They are required only to allege that Wells Fargo agreed to act

2   in a way that violates one of the other sections of 18 U.S.C. § 1962.[67]

3       Under either provision, Plaintiffs also must allege that Wells Fargo engaged in or agreed to

4   engage in one of the activities listed in 18 U.S.C. § 1961(a) as a predicate act of racketeering.[68]  If

5   the predicate act of racketeering involves fraud, Plaintiffs are subject to the heightened pleading

6   requirements of Fed. R. Civ. P. 9(b).[69]

7       Wells Fargo asserts that Plaintiffs fail to allege facts sufficient to state a RICO claim and

8   fail to meet the specificity requirements of Rule 9(b).  Plaintiffs' allegations regarding the

9   underlying racketeering activity appear to address two types of fraudulent conduct on the part of

10  Wells Fargo.  First, they appear to claim that Wells Fargo's failure to inform them of the

11  securitization of the loan instrument was a fraudulent omission on which they relied to their

12  detriment.[70]  Second, Plaintiffs claim that Wells Fargo engaged in a conspiracy essentially to

13  eliminate the documentation requirements for mortgages.[71]  They allege that through the

14  securitization of loans, Wells Fargo conspired to upend traditional recording requirements, and

15  then through the use of the mail and the internet, it filed documents with false claims regarding its

16  interests in the properties upon which it sought to foreclose.[72]

---

[66] *See Salinas v. United States*, 522 U.S. 52, 63 (1997).

[67] *See id.* at 64.

[68] *See Occupational-Urgent Care Health Sys., Inc. v. Sutro & Co., Inc.*, 711 F. Supp. 1016, 1021 (E.D. Cal. 1989).

[69] *See id.*

[70] *See* Docket No. 1 at ¶¶ 83-87.

[71] *See id.* at ¶ 90.

[72] *See id.* at ¶¶ 92-98

18

Case No.: 13-1540 PSG
**ORDER**

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs' claim fails to include the details of the alleged mail and wire fraud supposedly giving rise to the RICO claim.[73]  Rule 9(b) requires Plaintiffs to state "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."[74]  The allegations fail to meet this standard.  As a preliminary matter, Plaintiffs' shift between the types of fraud on which he bases his RICO claims already reveals that he has not alleged with specificity the predicate acts.  Is the RICO claim based on the allegedly fraudulent omission regarding the securitization of the loan or is it based on alleged misrepresentations about the proper beneficiary of the loan?  The complaint does not provide the answer.

The allegations they do make further reveal that they have failed to meet the requirements of Rule 9(b).  For example, Plaintiffs asserts that "[a] separate count of Mail Fraud took place each and every time a fraudulent pleading, Affidavit, Promissory Note assignment, mortgage or mortgage assignment was sent by a Defendant through the use of the US [sic] mail."[75]  Nothing in that statement explains which documents were fraudulent, which defendants sent the fraudulent documents, when they sent the document, or what in the documents was false.  Another example highlights the broad generalization of the complaint.  Plaintiffs assert that "[t]hese Defendants intentionally participated in a scheme to defraud everyone, including the Plaintiffs" and that they thereby "contribut[ed] to the foreclosure crisis."[76]  These allegations do not suffice to meet the particularity necessary to allege successfully a claim of fraud.  And so, to the extent that Plaintiffs allege a violation of Section 1962(a), the claim fails.

---

[73] *See Blake v. Dierdorff*, 856 F.2d 1365, 1368 (9th Cir. 1988) (applying Rule 9(b) to RICO claim based on fraud); *see also Occupational-Urgent*, 711 F. Supp. at 1021 (noting Rule 9(b) applies to RICO claims based on fraud).

[74] *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

[75] Docket No. 1-1 at ¶ 93.

[76] *Id.* at ¶ 83.

19

Case No.: 13-1540 PSG
**ORDER**

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Their attempt to allege a Section 1962(d) claim likewise fails.  Plaintiffs assert conclusorily that Wells Fargo and other defendants conspired to steal real property through illegal foreclosure liens,[77] but the actual facts they allege do not support that claim. Plaintiffs assert that various "securitizers/underwriters," "bankers," and Wells Fargo essentially agreed to undermine the traditional mortgage and lending system through the securitization of loans and a failure to abide by traditional recording mechanisms.[78]  But these actions do not coincide with any of the listed predicate activities under Section 1961(a), which is required to state a RICO claim.  Even assuming that the allegations could support some kind of mail fraud claim against Wells Fargo, nothing in Plaintiffs' allegations supports that Wells Fargo or any of the unnamed co-conspirators agreed to engage in the fraud.[79]

The RICO claim is DISMISSED WITH LEAVE TO AMEND.

## G.    Section 17200

Plaintiffs base their Section 17200 claim on Wells Fargo's attempt to foreclose on the Subject Property even though Wells Fargo knew it had no right to do so.  Plaintiffs' Section 17200 claim fails because they have not asserted the requisite harm.  They allege that because of Wells Fargo's unfair business practices, "a cloud has been placed on Plaintiffs' title and [their] interest in the Subject Property has been placed in jeopardy."[80]  But Cal. Bus. & Prof. Code § 17204 requires plaintiffs to establish that they have suffered an "injury in fact and ha[ve] lost money or property as

---

[77] *See id.* at ¶ 92.

[78] *See id.* at ¶ 101.

[79] *See, e.g. id.* at 86 (alleging false documents were sent through the mail but not alleging any agreement to do so).

[80] *Id.* at ¶ 52.

20

Case No.: 13-1540 PSG
**ORDER**

a result of the unfair competition."[81]  Plaintiffs have not alleged that they have lost either money or property as a result of Wells Fargo's alleged actions.

The Section 17200 claim is DISMISSED WITH LEAVE TO AMEND.

## IV.    CONCLUSION

The court dismisses all claims with leave to amend save the claims for wrongful foreclosure and Section 2923.5.  The court reserves to right, pending further briefing from the parties, to determine the preemptive effect of HOLA on these claims if Wells Fargo ultimately shows that it is entitled to the preemptive effect of HOLA.  Plaintiffs shall file any amended complaint within fourteen days of this order.

**IT IS SO ORDERED.**

Dated:  August 6, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[81] _See Walker v. Geico Gen. Ins. Co._, 558 F.3d 1025, 1027 (9th Cir. 2009).

Case No.: 13-1540 PSG
**ORDER**